COMMONWEALTH of Pennsylvania, Appellee

v.

**Ibrahim ABED, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 17, 2009.

Filed Jan. 29, 2010.

John P. Cotter, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, GANTMAN, and ALLEN, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered by the Court of Com-

mon Pleas of Philadelphia County after Appellant Ibrahim Abed was convicted of stalking,[1] harassment,[2] and contempt of court.[3] Appellant claims the trial court erred in denying his motions for acquittal and in revoking his bail. We affirm.

¶ 2 The relevant factual background and procedural history are as follows: Appellant and Complainant C.Z. began dating in August 2005, after meeting at the fitness center where she worked as a personal trainer. N.T. Trial, 5/9/08, at 10, 16–17. After Complainant ended the relationship in March 2006 and told Appellant not to contact her again, Appellant became upset and sent Complainant threatening text messages, warning her that if she did not see him that he would make her life miserable. *Id.* at 11–12.

¶ 3 Appellant relentlessly continued to text the Complainant, sending her on average 40 texts per day, often late in the evening, in which he blamed her for giving him "something." *Id.* at 12, 16. Appellant's messages were of a "nasty" nature, calling Complainant names and accusing her of cheating on him. *Id.* at 21. Appellant informed her he would buy a printer and threatened to post flyers. *Id.* at 12, 19. Within one week of this threat, Complainant found anonymous flyers on her apartment building door, showing her picture and claiming she had herpes and was transmitting the disease to others. *Id.* at 22, 26.

¶ 4 This incident caused Complainant to file for a Protection from Abuse order (PFA) against Appellant on May 10, 2006, which a civil court entered with Appellant's agreement on May 15, 2006. *Id.* at 22, 39. Complainant also began receiving hundreds of text messages and calls from a paid for cell phone whose owner could not be traced. *Id.* at 34–36. Calls from this number conveniently started one week after Appellant had returned from a trip from outside the United States. *Id.* at 45.

¶ 5 In July 2006, the abuse continued when Complainant found a flyer posted on a stoplight one block from her residence that read:

Help me. [Complainant] gave me herpes and H.P.V. My name is Robert and I dated her from April 19, 2006 until July 6, 2006. While with her, I contracted both these diseases. I confronted her about them and she told me that she didn't know if she had them. Soon after one of her neighbors told me that her ex-boyfriend had put up signs stating she had given him herpes. I intend to bring a lawsuit against her, and I need to know who her ex-boyfriends are. She's a yoga instructor at various places in the city. She lives at 2031 South Street. If you can help me at Robert Beson@Yahoo.com [sic]. If you have a problem with what I am doing or how I am going about it, do not hesitate to let me know. I'm not ashamed.

N.T. Trial, 5/9/08, at 30–31. Complainant testified she had never heard of "Robert Beson" and that the only person that filed a lawsuit against her was Appellant. *Id.* at 31. As if this publication was not enough, Complainant found similar flyers from a "Robert Deacon" with her picture enlarged under the windshield wipers of all the cars on her block and discovered that the flyers were also sent in the mail to her neighbors. *Id.* at 31–33.

¶ 6 As a result of Appellant's continued disregard for the PFA, Complainant filed a

1. 18 Pa.C.S.A. § 2709.1.

2. 18 Pa.C.S.A. § 2709.

3. 23 Pa.C.S.A. § 6114.

civil contempt petition on August 2, 2006.[4] *Id.* at 40. A series of hearings on this PFA contempt matter were held in family court, during which Appellant admitted sending Complainant "nasty text messages" because he was really upset. *Id.* at 43. Appellant also testified that he "told every single one of our friends [that Complainant gave him herpes and H.P.V.] and that's why [Complainant] is mad." *Id.* at 48.

¶ 7 In this criminal case, Appellant litigated a motion to suppress the statements made at the PFA contempt hearings. The trial court denied the suppression motion on May 9, 2008. After a waiver trial on May 9–14, 2008, Appellant was convicted of the aforementioned charges and his bail was revoked. On June 18, 2008, Appellant was sentenced to time served to twenty-three (23) months imprisonment to be followed by two (2) years probation for the stalking conviction along with a concurrent prison sentence of twelve (12) months for the contempt conviction. Appellant's harassment conviction carried no further penalty. Appellant filed a post-sentence motion which was denied on September 12, 2008. This timely appeal followed.

¶ 8 Appellant raises the following issues for our review:

A. Did the trial court err in not granting the defense motion for judgment of acquittal as to the crime of stalking?

B. Did the trial court err in not granting the defense motion for judgment of acquittal as to the charge of contempt for violation of order or agreement?

C. Did the trial court err in revoking [Appellant's] bail after the verdicts

of guilty were rendered and before sentencing?

Appellant's brief at 2.

¶ 9 In reviewing a challenge to the trial court's denial of a motion for judgment of acquittal, we are guided by the following precedent:

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. *Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.* The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence pro-

---

4. The record does not indicate the outcome of the civil contempt petition, which was still pending during the trial in this criminal case. N.T. Trial, 5/9/08, at 40–41; 5/14/08, at 59.

duced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hutchinson*, 947 A.2d 800, 805–806 (Pa.Super.2008) (emphasis in original) (citing *Commonwealth v. Andrulewicz*, 911 A.2d 162, 165 (Pa.Super.2006), appeal denied, 592 Pa. 778, 926 A.2d 972 (2007)) (citations omitted).

■ ¶ 10 Appellant first challenges his stalking conviction. The crime of stalking is defined at 18 Pa.C.S.A. § 2709.1, which provides in pertinent part:

§ 2709.1 Stalking.

(a) Offense defined.—A person commits the crime of stalking when the person either:

(1) engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury *or to cause substantial emotional distress to such other person;* or

(2) engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury *or to cause substantial emotional distress to such other person.*

18 Pa.C.S.A. § 2709.1(a) (emphasis added). The statute further defines the term "course of conduct" as:

A pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. The term includes lewd, lascivious, threatening or obscene words, language, drawings, caricatures or actions, either in person or anonymously. Acts indicating a course of conduct which occur in more than one jurisdiction may be used by any other jurisdiction in which an act occurred as evidence of a continuing pattern of conduct or a course of conduct.

18 Pa.C.S.A. § 2709.1(f).

■ ¶ 11 Appellant claims that his conviction cannot stand under subsection 2709.1(a)(1), because there was no proof of physical contact between Appellant and the Complainant. We find this assertion utterly baseless, as the statute clearly does not require physical contact as a necessary element of stalking, but includes "lewd, lascivious, threatening, or obscene words, language, drawings, caricatures, or actions, either in person or anonymously." 18 Pa. C.S.A. § 2709.1(f). Appellant's lewd and obscene texts, calls, flyers, and letters that accused Complainant of having an infectious disease are clearly encompassed in this statutory language.

¶ 12 Appellant's assertion that proof of physical contact is necessary to convict him of stalking directly conflicts with *Commonwealth v. Miller*, 455 Pa.Super. 534, 689 A.2d 238, 240 (1997), in which this Court rejected as "ludicrous" a similar argument that the defendant could not be convicted of stalking when he did not cause physical harm or attempt harm to his victim. This Court found the "intent to place one in fear of bodily injury is but one *mens rea* that will sustain a conviction under § 2709(a) and (b) . . . as a conviction may be upheld upon a showing that the accused intended to harass, annoy, alarm or cause substantial emotional distress." *Id.*

¶ 13 Appellant denies the Commonwealth proved he was responsible for sending the flyers and letters that accused Complainant of transmitting sexually transmitted disease to others. Viewing the evidence in the light most favorable to the Commonwealth, we find the evidence was sufficient to find Appellant sent Com-

plainant the flyers and letters. After Complainant ended their relationship, Appellant threatened he would get a printer to make flyers, which Complainant found on the door of her apartment one week later. Appellant admitted to telling mutual friends that Complainant was transmitting STDs to others and the flyers posted in Complainant's neighborhood and the letters sent to her neighbors claimed Complainant was spreading venereal diseases. Thus, there was sufficient evidence for the trial court to find that Appellant was responsible for sending the abusive flyers and letters.

¶ 14 Appellant also claims there was no evidence to show he intended to cause substantial emotional stress to Complainant. This argument is also clearly refuted by the facts of this case. Appellant clearly wanted to cause Complainant emotional stress when he threatened "to make her life miserable" if she did not see him. Appellant admitted in court to texting Complainant relentlessly and to publicly berating Complainant for allegedly spreading sexually transmitted diseases. Thus, the trial court did not err in denying Appellant's motion for judgment of acquittal as to his stalking conviction.

¶ 15 In the same manner, we do not find any merit in Appellant's claim that the trial court wrongly denied his motion for judgment of acquittal as to his conviction for the charge of contempt for violating the PFA order.

### § 6114. Contempt for violation of order or agreement

(a) General rule.—Where the police, sheriff or the plaintiff have filed charges of indirect criminal contempt against a defendant for violation of a protection order issued under this chapter, a foreign protection order or a court-approved consent agreement, the court may hold the defendant in indirect criminal contempt and punish the defendant in accordance with law.

23 Pa.C.S.A. § 6114(a).

¶ 16 Appellant argues that because the PFA order was not entered into the record, it is impossible to determine if he violated the order. However, the Commonwealth offered trial testimony that reflected the PFA was a "stay-away order" that restricted Appellant from going to Complainant's home or contacting her in any way. N.T. Trial, 5/13/08, at 36–37. Appellant did not object that this statement improperly characterized the PFA or that the actual document should have been presented to the court. Thus, this claim is waived. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal").

¶ 17 Appellant lastly claims the trial court erred by revoking his bail after finding him guilty but prior to sentencing. The Commonwealth claims this issue is moot as Appellant has since been sentenced. Although this issue is technically moot as we cannot grant Appellant relief, we will review the claim as the well-recognized exception to the mootness doctrine applies when a case is "capable of repetition yet evading review." *Commonwealth v. Dixon*, 589 Pa. 28, 35–36, 907 A.2d 468, 472–73 (2006) (citation omitted). This principle allows an appellate court to decide a case where "issues important to the public interest are involved, the nature of the question under consideration is such that it will arise again, and review will be repeatedly thwarted if strict rules of mootness are applied." *Id.* As such, we proceed to review the merits of this claim.

¶ 18 Pennsylvania Rule of Criminal Procedure 521 authorizes a trial court to modify an existing bail order of a defendant who is eligible for release on bail after a

verdict is entered or after sentencing. Pa. R.Crim.P. 521. The trial court may revoke bail if it finds the conditions of bail will not ensure that the defendant appears at further proceedings and complies with the bail bond or *"that the defendant poses a danger to any other person or to the community or to himself or herself."* Pa. R.Crim.P. 521(A)(2)(b) (emphasis added).

¶ 19 After the trial court found Appellant guilty of the aforementioned charges, the Commonwealth moved to revoke Appellant's bail, claiming that Appellant had continuously expressed suicidal tendencies to Complainant well after she ended their relationship. N.T. Trial, 5/14/08, at 53. The Commonwealth pointed out that Appellant exhibited dangerous behavior by staring with attraction at Complainant throughout the trial. *Id.* The trial judge confirmed the Commonwealth's assertion as he noted "something was amiss" in Appellant's behavior as he "caught [Appellant] giving a sick smile to [one of] Complainant's responses." *Id.* at 56. The trial court also opined that Appellant would not let go of his bitterness towards Complainant when Appellant loudly made snide remarks about Complainant's boyfriend at trial, asking if he "got tested." *Id.* at 56–57. We agree with the trial court that it is troubling that Appellant would go to this length to hurt someone.

¶ 20 As Appellant gave the court concern that he was a danger to himself and Complainant, the trial court did not abuse its discretion in revoking Appellant's bail.

¶ 21 Judgment of sentence is affirmed.