J-S06026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RUTH ROXY ROOKSTOOL | : | |
| | : | |
| Appellant | : | No. 227 EDA 2020 |

Appeal from the Judgment of Sentence Entered November 25, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001151-2019

BEFORE:  PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                      Filed: September 30, 2021

Appellant Ruth Roxy Rookstool appeals from the judgment of sentence imposed following her jury convictions for theft by unlawful taking, insurance fraud, and conspiracy to commit insurance fraud.[1]  Appellant raises numerous arguments that her convictions are constitutionally infirm.  Appellant also challenges the increase in her bail following her conviction and her sentence, and her sentence.  For the reasons that follow, we affirm in part, vacate in part, and remand for further proceedings to consider the trial court's restitution award.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3921(a), 4117(b)(4), and 903, respectively.

The parties are familiar with the facts and procedural history of this appeal.[2] Briefly, we note that Appellant's convictions concern her time as the treasurer and bookkeeper for the Morrisville Borough Ambulance Squad (MAS) and her interactions with her co-defendant, Brian Eckhart, between 2011 and 2018. Following her arrest, the magisterial district court released Appellant on unsecured bail of $50,000.00. Appellant's counsel, Brian M. Puricelli, Esq., entered his appearance.

On August 21, 2019, the parties litigated Appellant's pre-trial motions, which included claims that the Commonwealth failed to timely provide discovery or disclose a list of proposed witnesses. After hearing arguments from the parties, the trial court deferred its ruling and instructed Appellant's counsel to object to any undisclosed information during trial.

During jury selection, an issue arose concerning inconsistencies between the potential jurors' responses on their written questionnaires and their in-court responses to the trial judge. Following additional questioning of the jury pool and individual prospective jurors, the parties exercised their peremptory strikes and selected a jury.

Following a four-day trial, at which Appellant testified on her own behalf, the jury convicted Appellant of the above-mentioned offenses on August 27,

---

[2] The trial court also summarized the procedural and factual history of this appeal in its supplemental Pa.R.A.P. 1925(a) opinion. *See* Supplemental Trial Ct. Op., 11/10/20, at 1-13.

2019.[3]  Upon a motion by the Commonwealth at the conclusion of trial, the trial court increased Appellant's bail to $100,000.00.  Appellant filed post-trial motions, including a motion to modify bail, which the trial court denied pending the completion of the pre-sentence investigation report (PSI).

On November 25, 2019, the trial court sentenced Appellant to a recidivism risk reduction incentive (RRRI) sentence of eleven and one-quarter to thirty-six months' incarceration and a consecutive sixty months' probation. *See* 61 Pa.C.S. §§ 4501-4512.  The trial court also ordered Appellant to pay $101,634.55 in restitution.  Appellant did not file post-sentence motions.

On December 20, 2019, Appellant timely appealed and contemporaneously filed a Rule 1925(b) statement.[4]  The trial court initially

---

[3] The trial court instructed the jury to determine whether the theft concerned an amount over $2,000.00, and the jury found that Appellant's theft conviction involved an amount over $2,000.00.  *See* Verdict, 8/27/19; 18 Pa.C.S. § 3903 (grading theft as a third-degree felony when "the amount involved exceeds $2,000").

[4] The trial court did not order a Rule 1925(b) statement.  This Court has held that when an appellant files a Rule 1925(b) statement before the trial court orders one, "there is no need for the trial court to request it." *Commonwealth v. Nobles*, 941 A.2d 50, 52 (Pa. Super. 2008).  As the *Nobles* Court reasoned, this Court will not encourage "'sandbagging' by counsel if they are allowed to quickly file a Rule 1925(b) statement and then claim that nothing is waived because the Rule 1925(b) statement was not in response to a formal request."  *Id.* (noting that the Commonwealth's voluntary filing of an unrequested Rule 1925(b) statement, which failed to specify a challenge concerning the court's error in considering a suppression motion raised by the defendant in the middle of trial, required waiver of that challenge).

filed a Rule 1925(a) opinion finding waiver due to Appellant's failure to order the necessary transcripts.

On March 26, 2020, this Court remanded this matter for Appellant to order the transcripts. During the remand, Appellant ordered the transcripts and filed additional motions to compel production of documents concerning restitution and jury selection. The trial court granted the motions to compel, but later indicated that the jury pool's written questionnaires were destroyed. *See* Supplemental Trial Ct. Op. at 13. The trial court filed a supplemental Rule 1925(a) opinion.

Appellant presents the following issues for review:

1. Whether the pre, post, and trial motion rulings, and for objections, are singularly or collective reversible error, an abuse of discretion, and/or manifest abuse of discretion that denies [Appellant] of constitutional rights and requires reversal of the conviction?

2. Whether the post-verdict but presentencing bail change is error?

3. Whether the sentencing is a manifest abuse of discretion?

Appellant's Brief at 1.

### Issue 1—Singular or Collective Reversible Pre, Post, and Trial Errors

In her first issue, Appellant states that "there are many prejudicial errors and abuses of discretion that when viewed singularly or collectively denied [her] a fair trial . . . ." *Id.* Appellant argues cumulative prejudice to her constitutional rights to the presumption of innocence and proof beyond a

reasonable doubt and, throughout her brief, cites individual claims concerning (A) the sufficiency of the evidence, **see id.** at 14, 20, 30-31 (B) the failure to strike the entire jury pool, **see id.** at 18-20, 26, (C) discovery violations, **see id.** at 21, (D) the trial court's evidentiary rulings, **id.** at 27-30, (E) improper questions and comments by the prosecutor, **id.** at 31, and (F) the trial court's jury instructions, **see id.** at 20.

The Commonwealth responds that Appellant's individual issues are "quite difficult to discern" and argues that her "legal analysis following the litany of issues touched upon throughout her brief is often entirely undeveloped, if present at all." Commonwealth's Brief at 25. The Commonwealth asserts that "the vast majority of claims . . . should be deemed waived" due to Appellant's non-compliance with the issue preservation and briefing requirements in the Pennsylvania Rules of Appellate Procedure. **Id.** In any event, the Commonwealth contends that Appellant either failed to preserve her individual claims in the trial court or raise any meritorious appellate arguments. **Id.** at 29-34, 36-38, 41-43, 45-47, 49-51.

Initially, we note that while this Court has recognized that cumulative errors may deprive an appellant of a fair trial, an appellant cannot bootstrap a series of meritless claims into a claim of cumulative error. **See Commonwealth v. Rolan**, 964 A.2d 398, 411 (Pa. Super. 2008) (stating that "no number of failed claims may collectively attain merit if they could not do so individually" (quotation marks omitted)); **Commonwealth v. Scott**, 212

A.3d 1094, 1113 (Pa. Super. 2019), *appeal denied*, 222 A.3d 383 (Pa. 2019). Therefore, we will review each of Appellant's claims individually.

## A. Sufficiency of the Evidence

Before considering Appellant's sufficiency of the evidence claims, we note the Commonwealth's assertion that Appellant waived her arguments. The Commonwealth correctly argues that Appellant's brief lacks any citation to the relevant standard of review and criminal statutes defining her conviction for theft by unlawful taking, insurance fraud, and conspiracy to commit insurance fraud. Commonwealth's Brief at 28. Additionally, the Commonwealth asserts that Appellant's Rule 1925(b) statement was too vague to preserve her arguments. *Id.* at 28.

As discussed below, we agree that certain claims are waived, but we will consider Appellant's sufficiency of the evidence claims that are appropriate for our review.

### *Theft*

We first address Appellant's sufficiency argument concerning her theft conviction. Our review reveals that she preserved this claim in her Rule 1925(b) statement and that the trial court addressed it in its Rule 1925(a) opinion. Therefore, we will address the substantive merits of this claim. Appellant contends that the evidence was insufficient to establish her conviction for felony-three theft because she wrote checks for legitimate reasons related to MAS, such as snow removal, food, supplies for fundraisers,

and routine maintenance of vehicles and equipment. Appellant's Brief at 15-16. Appellant argues that the Commonwealth's case was speculative because the Commonwealth failed to prove "actual knowledge about the checks and could not by the checks provide evidence for guilt or intent." *Id.* at 15. Appellant emphasizes that investigators initially believed that she stole money because she was unable to provide documents but failed to consider those documents were destroyed. *Id.* Appellant further asserts that the Commonwealth failed to establish the value and ownership of the property taken. *Id.* at 20.

The Commonwealth argues that there was overwhelming evidence to convict Appellant of theft. *Id.* at 29. The Commonwealth, in part, notes that it presented evidence that Appellant wrote MAS checks to reimburse herself for payments that she personally made on behalf of MAS and that the reimbursements exceeded the payments that she made. *Id.* at 33.

The principles governing our review of a challenge to the sufficiency of the evidence are as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth

- 7 -

may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Sanchez*, 848 A.2d 977, 982 (Pa. Super. 2004)

Section 3921(a) of the Crimes Code defines theft by unlawful taking, in relevant part as follows: "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a). Section 3903 provides that a theft offense is graded as a third-degree felony "if the amount involved exceeds $2,000," but is less than $100,000. **See** 18 Pa.C.S. § 3903(a.1); **see also** 18 Pa.C.S. § 3903 (a)(5) (grading theft as a second-degree felony if amount involved "is $100,000 or more but less than $500,000").

Here, the trial court stated:

[T]he Commonwealth proved that Appellant unlawfully took money of [MAS] with intent to deprive it and this amount exceeded $2,000 but was less than $100,000. Through its numerous witnesses, the Commonwealth introduced evidence that Appellant exercised control over MAS's checkbook and accounts and enriched herself.

Through the testimony of Ms. Hoffer, MAS's President, the Commonwealth showed that Ms. Hoffer had the authority to sign checks on behalf of MAS and two signatures were required for each check. N.T. [Trial, 8/22/19, at 148]. In order to pay bills in a timely manner, a signature stamp was created with Ms. Hoffer's signature. **Id.** at 148-49. However, Appellant was only authorized to use the signature stamp for business related to MAS. **Id.** at 150.

> Through the testimony of Appellant's co-conspirator, Mr. Brian Eckert, the Commonwealth showed that Appellant took money from MAS with the intent to deprive MAS when Appellant paid for a honeymoon with MAS's funds and used a Home Depot credit card to buy Appellant a dishwasher. *Id.* at 153, 155. Appellant and Mr. Eckert paid $1,675.02 for the honeymoon and over $500 for the dishwasher. *Id.* at 201-02, 248. Additionally, Appellant reimbursed herself [over $5,000.00] in excess of the amount charged on her credit card for Stamps.com, as demonstrated through the testimony of Detective Landamia.

Supplemental Trial Ct. Op. at 19-20.

On this record, we agree with the trial court's reasoning that the evidence was sufficient to sustain Appellant's convictions for theft.[5] Accordingly, Appellant's claim fails.

### *Waiver—Insurance Fraud*

Appellant also contends that the evidence was insufficient to sustain her conviction for insurance fraud. Appellant's Brief 28, 31. Appellant essentially argues that the Commonwealth's evidence failed to establish the *mens rea* element of insurance fraud, namely, that she acted knowingly and with the intent to defraud MAS's health insurance providers. *See id.*; *see also* 18 Pa.C.S. § 4117(b)(4) (defining insurance fraud, in part, as "[a] person may not knowingly and with intent to defraud any insurance company, self-insured

---

[5] Appellant also contends that the jury's verdict on the amount involved in her theft conviction is suspect because the Commonwealth and the jury included health care payments as a theft amount. However, the Commonwealth's evidence based on excess reimbursements for Stamps.com alone was sufficient to establish a theft involving over $2,000.00. Therefore, we address Appellant's claim regarding the possible confusion in the jury's calculation of the amounts involved in greater detail when considering Appellant's challenge to the trial court's jury instructions.

or other person file an application for insurance containing any false information or conceal for the purpose of misleading information concerning any fact material thereto").

It is well settled that a Rule 1925(b) statement must sufficiently identify the errors complained of on appeal. *See* Pa.R.A.P. 1925(b)(4)(ii), (vii); ***Commonwealth v. Williams***, 204 A.3d 489, 494-95 (Pa. Super. 2019) (reiterating that "[w]hen the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review" (citation omitted). Additionally, this Court has held that an Appellant may not raise a new theory for relief for the first time in her appellate brief. ***Cf. Commonwealth v. Jones***, 191 A.3d 830, 834-35 (Pa. Super. 2018) (finding waiver of a weight of the evidence argument that differed from the argument in a defendant's post-sentence motion and Rule 1925(b) statement).

Instantly, Appellant's Rule 1925(b) statement raised the following issue challenging the sufficiency of the evidence underlying her insurance fraud conviction:

> Whether the conviction is constitutional firm, the court errs or abuses discretion, and the accused is materially prejudiced, to require the verdict vacated and a new trial granted, when for the theft charged by the insurance claim payment?

Rule 1925(b) Statement, 12/20/19, at ¶ 6 (verbatim).

The trial court concluded that it was "unclear" what Appellant's Rule 1925(b) statement meant. Supplemental Trial Ct. Op. at 23. Nevertheless, when attempting to consider the statement, the trial court noted that

Appellant's theft conviction concerned her use of unauthorized MAS checks and that her theft conviction did not relate to MAS's payment of premiums for her health insurance. *Id.*

Based on the foregoing, we conclude that Appellant's Rule 1925(b) statement did not preserve a challenge to the *mens rea* elements of insurance fraud. Therefore, we are constrained to agree with the Commonwealth that Appellant has waived her sufficiency issue concerning insurance fraud pursuant to Rule 1925(b)(4)(ii) and (vii). *See* Pa.R.A.P. 1925(b)(4)(ii), (vii); *Jones*, 191 A.3d at 834-35.

### *Waiver—Conspiracy*

As to Appellant's conspiracy conviction, our review of Appellant's Rule 1925(b) statement and her brief reveals Appellant's failure to raise a colorable issue or argument that the evidence was insufficient to sustain this conviction. Specifically, Appellant fails to identify any specific elements of the offense that the Commonwealth did not prove beyond a reasonable doubt. Therefore, we will not address her sufficiency challenge to the conspiracy offense. *See Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) (noting that it is an appellant's duty to present arguments that are sufficiently developed for our review [and] when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived" (some citations omitted)).

For the foregoing reasons, we conclude that Appellant preserved a single, meritless challenge to the sufficiency of the evidence sustaining her

theft conviction and failed to preserve sufficiency issues concerning her insurance fraud and conspiracy convictions. Accordingly, Appellant's challenges to the sufficiency of the evidence merit no relief.

## B. Jury Selection

Appellant next contends that the trial court erred in denying her motion to strike the entire jury pool. In support, Appellant refers to "significant inconsistencies" between the prospective jurors' answers on their written questionnaires and their in-court answers during jury selection. Appellant's Brief at 18. Appellant concludes that a fair and impartial jury could not have been seated. *Id.* The Commonwealth responds that this issue is waived because Appellant did not move to strike the entire jury pool. Commonwealth's Brief at 36-37.

It is well settled that a party must raise a timely objection in the trial court in order to preserve an issue for appeal. *See* Pa.R.A.P. 302(a); ***Commonwealth. v. Philistin***, 774 A.2d 741, 742 (Pa. 2001) (finding that an appellant waived a challenge to the racial makeup of the jury by failing to object during *voir dire*). Moreover, an appellate brief must contain citations to the record demonstrating where she preserved an objection. *See* Pa.R.A.P. 2117(c)(2) & 2119(e).

Here, Appellant's brief does not contain any citations to the record where she preserved her objection to the entire jury panel. *See* Pa.R.A.P. 2117(c)(2) & 2119(e). Appellant's reply brief, again without a specific citation to the record, discusses the portion of the jury selection transcripts that refers to a

sidebar conference discussing the prospective jurors' inconsistent answers on their questionnaires and during *voir dire*. Appellant's Reply Brief at 11 (arguing that the "the issue was preserved through a side bar, which the Commonwealth was present and spoke to oppose the disqualification of the jury poll).

However, our review of the sidebar conference to which Appellant refers to in her reply brief fails to substantiate Appellant's assertion that she specifically requested dismissal of the entire panel of prospective jurors. ***See*** N.T. *Voir Dire*, 8/21/19, at 28-29. Specifically, the jury selection transcripts lack any record of Appellant's objection to the entire pool, the trial court's overruling of such an objection, and any follow-up objection to the trial court's ultimate remedy of questioning the jury pool regarding their inconsistent answers on their questionnaires and in-court. ***See id.*** at 33-34 (indicating that Appellant's counsel only questioned the jury pool regarding their ability to decide the matter impartially). Further, except for prospective juror number 8, Appellant did not move to strike an individual juror for cause based on the potential juror's inconsistent answers during *voir dire*. ***See id.*** at 35-38.

Under these circumstances, we are constrained to agree with the Commonwealth. Although Appellant challenged an individual prospective juror, she did not object and move to dismiss the entire jury pool. Therefore, this issue is waived. ***See*** Pa.R.A.P. 302(a); ***Philistin***, 774 A.2d at 742.

## C. Discovery Violations

Appellant next contends that the trial court erred in denying her pretrial motions to preclude evidence or witnesses for the Commonwealth's **Brady**[6] violations and untimely responses to her requests for discovery.

By way of background, Appellant and the Commonwealth argued discovery issues at a pre-trial hearing on August 21, 2019. N.T. Trial, 8/21/19, at 3-26. At the hearing, the parties' discussion included references to problems exchanging three flash drives due to Appellant's counsel entering his appearance using an old office address and Appellant's inability to access those drives because the Commonwealth protected them with a password. **Id.** at 4-10. At least one of the flash drives prepared by the Commonwealth was also empty, which the Commonwealth attributed to the size of the file involved. **Id.** at 8. The parties also represented that on August 19, 2019, two days before trial, Appellant's counsel went to the District Attorney's office to review materials that could not be put on a flash drive. **Id.** at 9-10.

Appellant argued that she was entitled to a witness list and requested that the trial court "preclude those people who were not disclosed by name and what they would testify to" from testifying at trial. **Id.** at 18. According to Appellant's counsel, the Commonwealth had "to provide under **Brady** what the witness is going to say" in order to prepare a defense. **Id.** at 21. The Commonwealth responded that it did not believe that Appellant was entitled a "full witness list" but attempted to email a list to Appellant's counsel after

---

[6] **Brady v. Maryland**, 373 U.S. 83 (1963).

their meeting on August 19, 2019. *Id.* at 10. The Commonwealth stated that it mistakenly sent the list to a wrong email address. *Id.* On the evening before trial, the Commonwealth re-sent its list to Appellant's counsel. *Id.* Additional arguments concerning the witness list focused on two witnesses— Edward Manning, a financial investigator with Independence Blue Cross and Jill Ruggiero, a business account manager with United Healthcare. *Id.* at 12-14.

When asked by the trial court whether Appellant's counsel had "all the evidence," counsel responded: "True. But I don't know what the person is going to say. . . . They may say nothing that hurts my client, but I can't prepare a defense on a maybe." *Id.* at 22. When the court asked whether Appellant's counsel would need additional time for review, Appellant's counsel stated that he needed additional time to investigate to determine if the witnesses would testify beyond the documents that he received in discovery. *Id.* at 19.

The trial court ruled as follows:

> All right. I think we're going to go forward. Of course, if there is any ***Brady*** material that comes to light that hasn't been disclosed, certainly I'll entertain an appropriate motion at that time. But certainly sounds like all the documents have been provided, and all the discovery has been provided in one form or another.
>
> You may not know all the witnesses' names, but doesn't sound like they're going to go outside the four corners of the documents with a couple of them that concerned you. At least I don't see any prejudice at this point.

*Id.* at 26.

- 15 -

Appellant renewed her ***Brady*** objections when the Commonwealth called Manning and Ruggiero, N.T. Trial, 8/22/19, at 79, and when the Commonwealth presented Detective Eric Landamia with exhibits including documents obtained from TD Bank and M&T Bank pursuant search warrants. ***Id.*** at 262-63. Appellant did not raise a ***Brady*** objection when Appellant's co-defendant, Brian Eckert, testified against her, but cross-examined him regarding his plea agreement with the Commonwealth, including his plea to reduced offenses. ***Id.*** at 226. Appellant also stipulated to the contents of an audio recording, but she also preserved her right to argue her ***Brady*** issue further at the close of the Commonwealth's case. N.T. Trial, 8/26/19, at 3-5.

At the close of the Commonwealth's case, Appellant revisited her ***Brady*** objections, briefly arguing that she was not "provided certain things in discovery" and focusing on Manning and Ruggerio. ***Id.*** at 144. The Commonwealth responded that it provided all documents to Appellant in discovery and that it identified Manning and Ruggerio as witnesses. The Commonwealth added that Manning and Ruggerio essentially testified based on documents and information that were in Appellant's possession. ***Id.*** at 145.

In its Rule 1925(a) opinion, the trial court noted that Appellant's counsel "continually raised his objections to not being provided the witness list but did not raise any ***Brady*** issues" during trial. Supplemental Trial Ct. Op. at 17. The court continued: "Pa.R.Crim.P. 573(b) burdens the Commonwealth to make mandatory disclosures. However, it is clear from the record that the

Commonwealth simply did not violate this rule and this [c]ourt properly denied Appellant's pre-trial motion to preclude witnesses and evidence at trial." *Id.* Lastly, the court added that it found no prejudice resulting from Appellant's counsel's "self-created delay." *Id.*

On appeal, Appellant maintains that the problems during discovery amounted to a *Brady* violation that prejudiced her ability to prepare a defense and meaningful cross-examination of the Commonwealth's witnesses.[7] Appellant's Brief at 22-23. Specifically, Appellant asserts that the Commonwealth untimely disclosed the checks Appellant wrote from the MAS's bank accounts, various ledgers, and an audio recording of Appellant. *Id.* at 22-23, 28. Appellant also emphasizes that the Commonwealth previously continued Appellant's trial due to the unavailability of its witnesses but then "substituted new witnesses" without timely disclosing their identities and their statement. *Id.* at 23. Further, Appellant asserts that the Commonwealth failed to disclose a plea agreement with co-defendant, who testified at trial against Appellant. *Id.* at 20, 24.

The Commonwealth responds that "Appellant's claims are factually inaccurate and meritless." Commonwealth's Brief at 48. The Commonwealth contends that "there is simply no evidence of record to establish that [it] withheld any discovery." *Id.* at 50. As to the Appellant's claim regarding the identities of its witnesses, the Commonwealth argues that that the witnesses

_____

[7] Appellant discusses *Brady* at length without any meaningful discussion of Rule 573. *See* Appellant's Brief at 22-23

- 17 -

to whom Appellant objected "were primarily records custodians" and that it disclosed their names before trial. *Id.*

As to Appellant's argument that it failed to disclose co-defendant's plea agreement, the Commonwealth emphasizes that co-defendant testified that the Commonwealth made no promises in exchange for his plea and was awaiting sentencing at the time Appellant's trial. *Id.* at 48 n.1. The Commonwealth further notes that Appellant did not raise this argument before the trial court, referenced it for the first time in her appellate brief, and failed to adequately develop a meaningful argument in her brief. *Id.*

Our Supreme Court has explained that

> *Brady* and subsequent precedent flowing therefrom imposes upon a prosecutor the obligation to disclose all favorable evidence that is material to the guilt or punishment of an accused, even in the absence of a specific request by the accused. This Court has held that, to establish a *Brady* violation, a defendant has the burden to prove that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the prosecution has suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material, meaning that prejudice must have ensued.

*Commonwealth v. Bagnall*, 235 A.3d 1075, 1085-86 (Pa. 2020) (citations omitted).

Pennsylvania Rule of Criminal Procedure 573 states, in relevant part:

*(2) Discretionary With the Court.*

> (a) In all court cases, except as otherwise provided in Rules 230 (Disclosure of Testimony Before Investigating Grand Jury) and 556.10 (Secrecy; Disclosure), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect

and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

(i) the names and addresses of eyewitnesses;

(ii) all written or recorded statements, and substantially verbatim oral statements, of eyewitnesses the Commonwealth intends to call at trial;

(iii) all written and recorded statements, and substantially verbatim oral statements, made by co-defendants, and by co-conspirators or accomplices, whether such individuals have been charged or not; and

(iv) any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice.

Pa.R.Crim.P. 573(B)(2)

Following our review, we conclude Appellant failed to establish **Brady** violations concerning these claims. Initially, with respect to the documents to which Appellant objected, the record supports the trial court's finding that the Commonwealth disclosed the challenged documents before trial. **See** N.T. Trial, 8/21/19, at 22 (indicating that Appellant's counsel responded, "True," when the trial court asked whether Appellant had "all the evidence"); **see also** N.T. Trial, 8/22/19, at 262. Therefore, Appellant has not demonstrated that the Commonwealth suppressed the documents. **See Bagnall**, 235 A.3d at 1085-86.

With respect to Appellant's claims concerning the Commonwealth's witness list, Appellant cites no authority that **Brady** requires the Commonwealth to provide a witness list to the defense under the circumstances of this case. We note that our Supreme Court has held that

Rule 573 governs a demand for a witness list, and if a party properly brings a discovery dispute to the trial court, the court retains the discretion to grant or deny the request. *See Commonwealth v. Jones*, 668 A.2d 491, 512 (Pa. 1995) (discussing former Rule 305 and reasoning that witness lists do not fall under the mandatory disclosure rules of discovery); *see also Commonwealth v. Walter*, 119 A.3d 255, 283 (Pa. 2015) (discussing alleged discovery violation under Rule 573(B) and (D), the latter of which requiring a continuing duty to disclose the identity of additional witnesses, where the trial court previously entered an order compelling the parties to submit witness lists). In sum, we agree with the trial court that Appellant has not established the applicability of *Brady* to her claim concerning the Commonwealth's witness list.

With respect to Appellant's *Brady* claim based on the Commonwealth's plea agreement with co-defendant, the record reveals that Appellant was aware that co-defendant had pled guilty. Further, Appellant did not raise the Commonwealth's failure to disclose a plea agreement at any point before or during trial, and therefore she has not preserved this argument before the trial court. Lastly, as noted by the Commonwealth, Appellant's co-defendant testified that the Commonwealth made no promises in exchange for his plea, and Appellant did not present any evidence to contradict the record evidence before this Court. Based on this record, we conclude that because Appellant has not preserved the instant claim, and it remains too speculative to merit

any relief. *See Bagnall*, 235 A.3d at 1086 (discussing a *Brady* claim based on evidence of a cooperation agreement with a witness).

### D. <u>Evidentiary Rulings</u>

Appellant next contends that the trial court erred in admitting spreadsheets of insurance claims amounts presented by the Commonwealth that were irrelevant, immaterial, and prejudicial to Appellant. Appellant's Brief at 27-28. Appellant also argues that the trial court erred when it initially determined that a defense exhibit, which she offered to show MAS's prior practices when submitting forms for coverage, was irrelevant, but then permitted Appellant to admit the exhibit. *Id.* at 29.

The Commonwealth responds that Appellant's challenge regarding her exhibit is frivolous because the trial court "eventually admitted into evidence" the document showing MAS's past practices as Exhibit D-1. As to its own spreadsheets, the Commonwealth argues that Appellant failed to identify her precise claim in her appellate brief nor did she properly object at trial to preserve her claim that the information in the exhibits were irrelevant and prejudicial. Regardless, the Commonwealth also concludes that the trial court properly admitted the exhibits as demonstrative materials that assisted in the presentation of "voluminous financial information . . . to the jury throughout trial." *Id.* at 46.

It is well-settled that,

> [w]ith regard to the admission of evidence, we give the trial court broad discretion, and we will only reverse a trial

court's decision to admit or deny evidence on a showing that the trial court clearly abused its discretion. . . .

Relevance is the threshold for admissibility of evidence. "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action."

"The court may exclude relevant evidence if its probative value is outweighed by a danger of . . . unfair prejudice . . . . "

However, [e]vidence will not be prohibited merely because it is harmful to the defendant. [E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based on something other than the legal propositions relevant to the case. . . . This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand[.]

*Commonwealth v. Talbert*, 129 A.3d 536, 539 (Pa. Super. 2015) (some citations and quotation marks omitted).

Here, as to Exhibit D-1, the record belies Appellant's contention that the trial court precluded the evidence due to relevance. The record shows that Appellant initially offered Exhibit D-1 during cross-examination of a Commonwealth's witness. Although the Commonwealth objected based on relevance, the trial court ruled that Appellant could admit the exhibit during her case-in-chief. Appellant's counsel stated that he would recall the witness during the defense's case, but he did not do so. Further, when Appellant's counsel offered the exhibit before closing arguments, the trial court admitted the exhibit. Accordingly, the record supports the trial court's opinion that it did not preclude Exhibit D-1 based on relevance, and Appellant's claim fails. *See* Supplemental Trial Ct. Op. at 17-18.

As to the Commonwealth's exhibits, a review of the record establishes that the Commonwealth proffered and the trial court admitted the challenged exhibits as demonstrative evidence that summarized the documents that Detective Landamia obtained during his investigation and that the Commonwealth disclosed during an admittedly challenging discovery process, which included the password protected flash drives and at least one empty flash drive. However, Appellant's arguments lack specific cites concerning the admission of exhibits as demonstrative evidence. Therefore, we conclude that this claim is waived. *See Kane*, 10 A.3d at 331.

### E. Comments by the Prosecutor

Appellant next argues that the Commonwealth impermissibly shifted the burden of proof and violated her right to the presumption of innocence. Appellant's Brief at 31. In support, Appellant refers to comments during cross-examination and in closing argument when the prosecutor stated that Appellant had opportunities to explain the discrepancies when she talked to Detective Landamia. Appellant's Brief at 31. According to Appellant, the Commonwealth's comments "inferred [she] had to clear her name and prove her innocence." *Id.* Additionally, Appellant asserts that the Commonwealth improperly stated that the amount of the theft included benefits she received from her insurance fraud conviction and improperly stated that Appellant stole municipal funds. *Id.* at 32.

The Commonwealth contends that Appellant waived this issue by failing to properly preserve it in her Rule 1925(b) statement. Commonwealth's Brief

at 39. The Commonwealth notes that while Appellant's Rule 1925(b) statement mentions the trial court's denial of her motion for mistrial, she did not specify the prosecutor's comments as grounds for relief. *Id.* The Commonwealth adds that the trial court did not address this issue in its supplemental Rule 1925(a) opinion. *Id.* Nevertheless, the Commonwealth asserts that its comment referring to Appellant's opportunity to "clear her name" was a proper rebuttal of Appellant's evidence and was not so prejudicial as to warrant a new trial. *Id.* at 41-42.

Following our review, we are constrained to agree with the Commonwealth that Appellant's Rule 1925(b) statement did not preserve her arguments concerning the prosecutor's comments at trial. Specifically, Appellant's Rule 1925(b) statement only raised the issue of a mistrial in the following error complained of on appeal:

> Whether the conviction is constitutional firm, the Court errs or abuses discretion, the accused is materially prejudiced, to require the verdict vacated and a new trial granted when the Court denies the accused's motion for a mistrial and judgment of acquittal, and the Commonwealth introduces over the accuser's sustained objection documentary and oral testimony of the amount of insurance payments for health coverage care?

Rule 1925(b) Statement at ¶ 5 (verbatim).

Based on the record, we conclude that this statement of the error complained of was too vague to preserve an appellate challenge to the comments by the prosecutor. Although Appellant's Rule 1925(b) statement mentioned her motion for mistrial, it omitted any reference to her claim

concerning an infringement of her right to a presumption of innocence, the Commonwealth's shifting of the burden of proof, or improper comments by the Commonwealth. Rather, her Rule 1925(b) statement specified a claim regarding the admission of evidence. As noted by the Commonwealth, the trial court did not address the prosecutor's comments in its Rule 1925(a) opinion, and we conclude that the trial court would have been forced to speculate as to the precise nature of the claim Appellant raises in her appellate brief. *See Williams*, 204 A.3d at 494-95. Therefore, we are constrained to conclude that Appellant's claim is waived. *See* Pa.R.A.P. 1925(b)(4)(ii), (vii).

### F. **Jury Instruction**

In her final issue raised to support her argument that her convictions were constitutionally infirm, Appellant asserts that the trial court erred when it denied her request for a jury instruction regarding amounts involved in the theft. Appellant's Brief at 20. Referencing her prior arguments regarding the admission of evidence and the Commonwealth comments, Appellant asserts:

> To test whether the Jury had become biased on the Commonwealth's inflated evidence, [Appellant] proposed a jury interrogatory that required the jury to calculate the theft amount. The trial judge disallowed the interrogatory and fashioned one that merely had the Jury select among a range of values. Thus, the Jury would not remove the medical claim values when it determined the theft amount. [Appellant] objected to the charge, she submits it was reversible error to deny her proposed jury interrogatory, since the jury is the fact-finder of the theft amount, and the amount must be determined from admissible relevant evidence and not the inflated amounts the Commonwealth had presented. The amount of the theft is used to grade a theft thus properly sentence since the grade of the crime is needed by the sentence guidelines to calculate a proposed sentence. The

correct/proper amount is needed also for restitution[.] Ergo, the issue over the claim payment amount greatly affects the validity of [Appellant's] sentence. The error here is prejudicial and reversible error that singularly and combined with the other errors denied [Appellant's] of her Sixth Amend[ment] and Article I fair trial right and warrant reversing and vacating the conviction.

*Id.* at 20-21.

Although Appellant raised this issue in her Rule 1925(b) statement,[8] neither the trial court nor the Commonwealth addressed the ruling on Appellant's proposed instruction.

It is well settled that this Court will "reverse a [trial] court's decision only when it abused its discretion or committed an error of law." ***Commonwealth v. Baker***, 24 A.3d 1006, 1022 (Pa. Super. 2011) (citation omitted). When a trial court refuses to deliver a specific jury instruction, "it is the function of this Court to determine whether the record supports the trial court's decision." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1257 (Pa. Super. 2014) (*en banc*) (citation omitted).

As noted above, Section 3903 grades theft as a third-degree felony when "if the amount involved exceeds $2,000." ***See*** 18 Pa.C.S. § 3903(a.1).

_____

[8] Specifically, Appellant's Rule 1925 stated:

Whether the conviction is constitutional firm, the Court errs or abuse discretion to require the verdict vacated and a new trial granted when the Court does not require the jury during deliberation to calculate and find beyond a reasonable doubt the actual amount of the alleged theft and the name of the property owner on the theft by unlawful taking charge?

Rule 1925(b) Statement at ¶ 4.

- 26 -

Instantly, the trial court instructed the jury on theft as follows:

[Appellant], as I've told you, has been charged with theft of movable property. Find [sic] [Appellant] guilty of this offense, you must find the following elements have been proven beyond a reasonable doubt:

First, that [Appellant] took moveable property from another, namely monetary funds for U.S. currency, **and in this case from [MAS]**.

Secondly, those items are moveable property of another. Moveable property is property, the location of which can be changed.

Third, the taking was unlawful.

Fourth, that **the taking was with the intent to deprive [MAS] of its property**.

A person acts with intent if it is his or her conscious object to engage and such conduct were to cause such a result.

If you find [Appellant] guilty of theft by unlawful taking on the basis of these instructions, it will be necessary for you to make a further determination regarding the value of the property. There will be a place on the verdict slip for you to record that determination.

First, **you should consider whether the [C]ommonwealth has established, beyond a reasonable doubt, the value of the property or other items is $2,000 or more**. If you find this, please indicate so on the verdict slip.

N.T. Trial, 8/27/20, at 155-57 (emphases added).

After Appellant objected to the trial court's initial charge, the trial court further instructed the jury as follows:

Now I want to make sure on the verdict slip you -- I know you paid attention to everything that was said by the lawyers, this is a guide. It's only for reference so that you can keep things straight. But I want to just remind you one last time you need to

- 27 -

separate the theft from the insurance fraud charge. The theft is what you have to decide the amount on.

The insurance fraud, while some of the evidence overlaps, I think the lawyers argued that to you, from their respective positions, understand that theft is a very -- you have to make a very specific finding that something was taken and it has to be proven, beyond a reasonable doubt, that whatever the -- **and in this case it's the currency or cash from the ambulance company** that that's what was taken, that's what the theft was, and that it was $2,000 or more. All right. So I think that clears up a couple of points that the lawyers asked me to clarify. I believe that's it.

*Id.* at 181-82 (emphasis added).

Based on the foregoing, we discern no error in the trial court's instructions to the jury, or an abuse of discretion in the trial court's decision to reject Appellant's alternative instructions and special interrogatories for the jury. *See Baker*, 24 A.3d at 1022. Therefore, Appellant is not entitled to relief.

### G. Cumulative Error

To summarize, our review concludes that Appellant waived certain individual claims and that her preserved claims lack merit as discussed at length above. Because Appellant failed to establish any merit or prejudice resulting from her preserved claims, we concluded that "there is no basis for a claim of cumulative error." *See Commonwealth v. Bomar*, 104 A.3d 1179, 1216 (Pa. 2014) (discussing cumulative error in the context of claims of ineffective assistance of counsel). Accordingly, Appellant's claim that the individual errors resulted in the deprivation of her constitutional protections

guaranteeing the presumption of innocence and that convictions be proven beyond a reasonable doubt fails. *See id.*

### Issue 2—Post-Verdict Bail

Appellant's next issue concerns the trial court's decision to increase her bail after the verdict but before sentencing. Appellant contends that the increase in bail from $50,000.00 to $100,000.00 was arbitrary and capricious because the trial court failed to make appropriate findings under Rule 521, and she requests a declaration that she was subjected to an unconstitutionally excessive bail. Appellant's Brief at 36.

In response, the Commonwealth asserts that the issue is moot. Commonwealth's Brief at 51-52. Alternatively, the Commonwealth argues that Appellant's claim lacks merit because the trial court ultimately explained its reasons for increasing Appellant's bail. *Id.* at 52.

This Court reviews a determination to change bail after a verdict for an abuse of discretion. *See Commonwealth v. Abed*, 989 A.2d 23, 29 (Pa. Super. 2010); *Commonwealth v. McDermott*, 547 A.2d 1236, 1242 (Pa. Super. 1988). Pennsylvania Rule of Criminal Procedure 521 guides the trial court's exercise of discretion and provides, in relevant part:

> **(A) Before Sentencing**
>
> *(2) Other Cases*
>
>         \*    \*    \*
>
> > (b) Except as provided in paragraph (A)(1) [concerning capital and life imprisonment cases], when the aggregate of

possible sentences to imprisonment on all outstanding verdicts against the defendant within the same judicial district can exceed 3 years, the defendant shall have the same right to bail as before verdict unless the judge makes a finding:

(i) that no one or more conditions of bail will reasonably ensure that the defendant will appear and comply with the conditions of the bail bond; or

(ii) that the defendant poses a danger to any other person or to the community or to himself or herself.

\* \* \*

## (D) Modification of Bail Order After Verdict or After Sentencing

(1) When a defendant is eligible for release on bail after verdict or after sentencing pursuant to this rule, the existing bail order may be modified by a judge of the court of common pleas, upon the judge's own motion or upon motion of counsel for either party with notice to opposing counsel, in open court on the record when all parties are present.

(2) The decision whether to change the type of release on bail or what conditions of release to impose shall be based on the judge's evaluation of the information about the defendant as it relates to the release criteria set forth in Rule 523. The judge shall also consider whether there is an increased likelihood of the defendant's fleeing the jurisdiction or whether the defendant is a danger to any other person or to the community or to himself or herself.

(3) The judge may change the type of release on bail, impose additional nonmonetary conditions as provided in Rule 527, or, if appropriate, impose or increase a monetary condition as provided in Rule 528.

Pa.R.Crim.P. 521.

Rule 523, in turn, instructs a court to consider information relevant to "the defendant's appearance or nonappearance at subsequent proceedings" including:

(1) the nature of the offense charged and any mitigating or aggravating factors that may bear upon the likelihood of conviction and possible penalty;

(2) the defendant's employment status and history, and financial condition;

(3) the nature of the defendant's family relationships;

(4) the length and nature of the defendant's residence in the community, and any past residences;

(5) the defendant's age, character, reputation, mental condition, and whether addicted to alcohol or drugs;

(6) if the defendant has previously been released on bail, whether he or she appeared as required and complied with the conditions of the bail bond;

(7) whether the defendant has any record of flight to avoid arrest or prosecution, or of escape or attempted escape;

(8) the defendant's prior criminal record;

(9) any use of false identification; and

(10) any other factors relevant to whether the defendant will appear as required and comply with the conditions of the bail bond.

Pa.R.Crim.P. 523(A)(1)-(10).

Rule 528(A) also requires consideration of the following factors when determining the amount of a monetary condition of bail: "(1) the release criteria set forth in Rule 523; and (2) the financial ability of the defendant."

Pa.R.Crim.P. 528(A). Additionally, Rule 528 states that "[t]he amount of the monetary condition shall be reasonable." Pa.R.Crim.P. 528(B).

This Court has stated that an order revoking bail is interlocutory and cannot be immediately appealed without following the appropriate Rule of Appellate Procedure. **Commonwealth v. Colleran**, 469 A.2d 1130, 1131 (Pa. Super. 1983) (*per curiam*). Currently, the Pennsylvania Rules of Appellate Procedure state:

> Where the trial court enters an order under Pa.R.A.P. 1762(b) granting or denying release or modifying the conditions of release before sentence, a party may seek review of that order by filing a petition for specialized review in the appellate court that would have jurisdiction over the appeal from the judgment of sentence.

Pa.R.A.P. 1610.

Once sentence is imposed, however, issues of mootness arise because this Court no longer can grant substantive relief. **Compare Abed**, 989 A.2d at 28 (noting that post-verdict bail revocation issue "is technically moot as we cannot grant relief), **with Commonwealth v. Myers**, 86 A.3d 286, 293 (Pa. Super. 2014) (remanding case for a bail hearing, "**unless** [the appellant] has completed his term of confinement). Nevertheless, this Court has addressed post-verdict changes in bail because they are capable of repetition. **See Abed**, 989 A.2d at 28; **see also Myers**, 86 A.3d at 293.

Instantly, we note that Appellant's arguments lack any meaningful discussion of the trial court's statement, at the hearing denying Appellant's motion to modify bail, that the court increased bail because Appellant faced a

maximum possible sentence of seventeen years and that the court deemed Appellant to be "flight risk." **See** N.T. Bail Modification Hr'g, 9/24/19, at 9-10; **see also** Supplemental Trial Ct. Op. at 26. Moreover, although we are mindful that the issue is capable of repetition, we conclude that Appellant's challenge to the increased bail between the verdict and sentencing is moot where, as here, it is undisputed that Appellant is no longer incarcerated. **Cf. Myers**, 86 A.3d at 293. Accordingly, even if the trial court erred in failing to consider Rule 521 when it increased bail after trial, this Court has no basis to grant any substantive relief.[9] Therefore, Appellant's claim is moot, and we decline to address this claim and issue the declaration that Appellant seeks.

### Issue 3—Sentencing Issues

In her third issue, Appellant challenges her sentence, and we reproduce her argument verbatim:

> Ms. Rookstool was in custody and incarcerated for 90 days before sentencing. She was incarcerated the 90 days for conduct on which she was charged or the charge based. This is undisputed or disputable by the Commonwealth. As such, Ms. Rookstool was entitled to a credit of 90 days for time served. She was not given the credit albeit, it seems from the sentencing transcript that she was to be given the credit (11/25/19 Sentencing Transcript at 33:11-16). Nonetheless, it remains that the DOC did not credit Ms. Rookstool for 90 days. Ergo, Ms. Rookstool submits here sentence was excessive, cruel, and unusual. She only faced two and a half months incarceration time and has done 90 days of 15 day more than she faced. e. She was sentenced to three years State Prison time, which was a cruel punishment, particularly

---

[9] Appellant concedes as much noting that "the bail issue seemingly cannot be remedied except for the declaration that [she] requests." Appellant's Brief at 36 n.15.

since co-defendant Eckert received less time and house arrest, which again infers the sentence was punishment for exercising her rights than for criminal conduct. Equally, the pre-sentence report showed this to be Ms. Rookstool's first brush with the law and that she had a low IQ. Her financial status was poor with no ability to pay fines, least the ordered $103,000.00 restitution. Jail time and particularly State imprisonment was not a recommendation. Under the circumstances, incarceration was and intended to be cruel and unusual punishment and the restitution order is an excessive fine. Accordingly, [Appellant] respectfully requests the Court to reverse the restitution order.

Appellant's Brief at 37.

The Commonwealth responds that Appellant waived any challenge to the discretionary aspects of her sentence by failing to file a post-sentence motion and including in her brief a Pa.R.A.P. 2119(f) statement. Commonwealth's Brief at 54-55. The Commonwealth further notes that Appellant's allegation that the Department of Corrections failed to provide appropriate sentencing credit based on the trial court's sentencing order should have been raised in the Commonwealth Court. *Id.* at 57. The Commonwealth also asserts that Appellant failed to raise a substantial question warranting appellate review of the discretionary aspects of her sentence. *Id.* at 56. As to Appellant's reference to the restitution award, the Commonwealth notes that it is "unable to determine any reason why the calculated restitution . . . was inaccurate or unlawful in any way." *Id.* at 59.

Our Supreme Court recently provided the following guidance:

> Where a claim concerns the sentencing court's exercise of discretion in fashioning a sentence, the defendant must preserve and present the claim at trial by way of a contemporaneous objection and/or a post-trial motion and on appeal through the process provided by 42 Pa.C.S. §

- 34 -

9781(b) and Pa.R.A.P. 2119(f). Where a claim concerns the sentencing court's authority to impose a sentence, it is reviewable as of right on direct appeal, without regard to preservation of the claim. "[A] determination that a claim implicates the legality of a sentence ... operates to revive a claim otherwise insufficiently preserved below," and is reviewable by this Court on permissive appeal.

*Commonwealth v. Weir*, 239 A.3d 25, 34 (Pa. 2020) (citation omitted).

## A. Discretionary Aspects of Sentence

To the extent Appellant's claims implicate the discretionary aspects of her sentence, we agree with the Commonwealth that Appellant waived this issue by failing to file post-sentence motions or include a Rule 2119(f) statement in her brief. *See generally id.* Because Appellant's challenge to the excessive amount of restitution also relate to the discretionary aspects of her sentence, that claim is also waived. *See id.* Accordingly, we decline to consider Appellant's discretionary aspects of sentencing claims. *See id.*; *see also Commonwealth v. Roser,* 914 A.2d 447, 457 (Pa. Super. 2006); *Commonwealth v. Parker*, 847 A.2d 745 (Pa. Super. 2004)

## B. Legality of Sentence—Restitution

However, Appellant's arguments, when read in their entirety, suggest challenges to the trial court's statutory authority to impose restitution. *See* Appellant's Brief at 21 (arguing, in the context of jury instruction that the possibility of confusion over amounts involved in Appellant's theft and insurance fraud convictions), 37 (discussing the amount of restitution and her ability to pay). Therefore, we will address these issues. *See Weir*, 239 A.3d at 34.

Currently, Section 1106 of the Crimes Code states:

**(a) General rule.**—Upon conviction for any crime wherein:

(1) property of a victim has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime . . .

\*    \*    \*

**(c) Mandatory restitution.—**

(1) The court shall order full restitution:

(i) **Regardless of the current financial resources of the defendant**, so as to provide the victim with the fullest compensation for the loss. . . .

(ii) If restitution to more than one victim is set at the same time, the court shall set priorities of payment. However, when establishing priorities, the court shall order payment in the following order:

(A) Any individual.

**(A.1) Any affected government agency.**

\*    \*    \*

(C) Any other government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(D) Any insurance company which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

\*    \*    \*

**(F) Any business entity organized as a nonprofit or not-for-profit entity.**

**(G) Any other business entity.**

\*    \*    \*

(3) The court may, at any time or upon the recommendation of the district attorney that is based on information received from the victim and the probation section of the county . . . .

**(h) Definitions.—**As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

"Affected government agency." The Commonwealth, a political subdivision or local authority that has sustained injury to property.

"Business entity." A domestic or foreign:

(1) business corporation;

(2) nonprofit corporation;

(3) general partnership;

(4) limited partnership;

(5) limited liability company;

(6) unincorporated nonprofit association;

(7) professional association; or

(8) business trust, common law business trust or statutory trust.

\*   \*   \*

"Victim." As defined in section 103 of the act of November 24, 1998 (P.L. 882, No. 111), known as the Crime Victims Act. [10]

---

[10] Section 1106 also relies on the definition of a victim in the Crime Victims Act (CVA), which, in turn, provides:

**"Direct victim."** An individual against whom a crime has been committed or attempted and who as a direct result of the criminal act or attempt suffers physical or mental injury, death or the loss of earnings under this act.

**"Victim."** The term means the following:

*(Footnote Continued Next Page)*

The term includes an affected government agency, the Crime Victim's Compensation Fund, if compensation has been paid by the Crime Victim's Compensation Fund to the victim, any insurance company that has compensated the victim for loss under an insurance contract and any business entity.

18 Pa.C.S. § 1106(a)(1), (c)(1), (h) (eff. Oct. 24, 2018) (emphases added).

Notably, the General Assembly included the references to "an affected government agency," "any business entity organized as a nonprofit or not-for-profit entity," and "other business entity" in Section 1106 in 2018. *See* 2018, Oct. 24, P.L. 891, No. 145, § 1 (eff. immediately).

---

(1) A direct victim.

(2) A parent or legal guardian of a child who is a direct victim, except when the parent or legal guardian of the child is the alleged offender.

(3) A minor child who is a material witness to any of the following crimes and offenses under 18 Pa.C.S. (relating to crimes and offenses) committed or attempted against a member of the child's family:

Chapter 25 (relating to criminal homicide).

Section 2702 (relating to aggravated assault).

Section 3121 (relating to rape).

(4) A family member of a homicide victim, including stepbrothers or stepsisters, stepchildren, stepparents or a fiance, one of whom is to be identified to receive communication as provided for in this act, except where the family member is the alleged offender.

18 P.S. § 11.103.

Instantly, Appellant's offenses occurred from 2011 to 2018.[11]  At the November 25, 2019 sentencing hearing, the Commonwealth sought a total amount of restitution of $101,634.55, as follows: (1) $29,628.78 to Morrisville Borough and $4,783.27 to Falls Township for municipal funds given to MAS; and (2) $20,639.23 to Independence Blue Cross, $45,902.47 to United Healthcare, and $680.80 Guardian Life Insurance for benefits they paid to Appellant.  N.T. Sentencing Hr'g, 11/25/19, at 2-3.  The trial court accepted the Commonwealth's arguments and imposed the restitution requested by the Commonwealth.  Following this Court's previous remand, and in response to Appellant's motions to compel production, the Commonwealth asserted that its request for restitution to the municipalities included the amounts involved in Appellant's theft and Morrisville Borough's direct payments of Appellant's insurance premiums.

At the outset, we note that Appellant's passing reference to her ability to pay restitution merits no relief because, since 1995, Section 1106 has expressly provided that restitution shall be imposed regardless of her current financial resources.  **See** 18 Pa.C.S. § 1106(c)(1) (eff. 1995); **Commonwealth v. Petrick**, 217 A.3d 1217, 1225 (Pa. 2019) (noting that the General Assembly "ability to pay as a prerequisite consideration" when imposing sentence and "simply placed the consideration of a defendant's

---

[11] The record indicates that MAS formally ceased operations in October of 2018.  N.T. Trial, 8/21/19, at 87.

ability to pay at the more pertinent stage, when a sentence court must assess a defendant's compliance with the order" (footnote omitted)).

However, a review of the record reveals that neither the parties nor the trial court discussed whether the post-2018 or preceding version of Section 1106 applied at the time of sentencing. This determination is critical to any discussion of the legality of the restitution portion of Appellant's sentence.[12]

Specifically, applying the pre-2018 version of Section 1106, our Supreme Court held that "to qualify for restitution under Subsection 1106(c)(1)(i), a Commonwealth agency either must be a victim as that term is used in that subsection or must have reimbursed a victim as defined by Section 11.103, directly or by paying a third party on behalf of the victim." **Commonwealth v. Veon**, 150 A.3d 435, 447, 454 (Pa. 2016) (holding that the Pennsylvania Department of Community and Economic Development (DCED) was not entitled to be paid restitution when it provided funds to organizations through which the defendant committed crimes). Applying **Veon**, this Court further held that other governmental agencies and other organizations, such as the United States Coast Guard, a Pennsylvania limited liability company, and an insurance company, were not entitled to restitution under the pre-2018 version of Section 1106 unless these entities were being compensated for reimbursements to direct victims who had been harmed by the offender. **See e.g. Commonwealth v. LeClair**, 236 A.3d 71, 86 (Pa.

---

[12] We note that the Commonwealth cites the current version of Section 1106 without further discussion.

Super. 2020), *appeal denied*, 244 A.3d 1222 (Pa. 2021) (vacating a restitution award to the United States Coast Guard as illegal); **Commonwealth v. Hunt**, 220 A.3d 582, 584, 591 (Pa. Super. 2019) (concluding that the definition of a "'direct victim' under the CVA (and, consequently, the definition of 'victim' under the pre-[2018] amendment version of § 1106) does not include corporate entities like [a limited liability corporation]" on whose account the defendant wrote sham checks)); **Commonwealth v. Tanner**, 205 A.3d 388, 398 (Pa. Super. 2019) (concluding that a township and "an insurance company is entitled to receive restitution only when it compensates a victim" under the pre-2018 amendments to Section 1106).

Therefore, if the pre-2018 version of Section 1106 applies, it appears that municipalities and organizations, such as MAS and insurance companies, may not be entitled to mandatory restitution. While the post-2018 version of Section 1106 appears to recognize "affected governmental entities" and "business entities" as direct victims, **see** 18 Pa.C.S. § 1106(h) (eff. Oct. 24, 2018), our courts have not yet expressly considered or held that the post-2018 version of Section 1106 should apply if the criminal conduct occurred before the effective date of the amendment. **Compare Hunt**, 220 A.3d at 586-87 & nn.3-5 (declining to apply the post-2018 version of Section 1106 when, in part, the General Assembly did not unambiguously give retroactive effect to the 2018 amendment, and noting that the defendant's conduct, and the adjudication of guilt, sentencing, and restitution issues were resolved before the effective date of the 2018 amendments), **and Tanner**, 205 A.3d

at 396 n.7 (applying the pre-2018 version of Section 1106 when all "events that led" to the "conviction occurred before October 24, 2018"), **with LeClair**, 236 A.3d at 82 (applying the pre-2018 version of Section 1106 when the 2018 amendment took effect after the defendant's conduct but before sentencing), **and Commonwealth v. Lock,** 233 A.3d 888, 890 n.2 (Pa. Super. 2020) (same). **But see Commonwealth v. Kline**, 695 A.2d 872, 873 (Pa. Super. 1997) (permitting restitution to an insurance company that reimbursed the victim based on a version of Section 1106 that took effect after the defendant's crimes but before sentencing and rejecting the defendant's claim that restitution violated *ex post facto* principles).

We acknowledge that this Court could find waiver based on Appellant's failure to develop this claim in the trial court or on appeal and affirm without prejudice to Appellant's rights to seek a modification of restitution in a collateral proceeding. **See** 18 Pa.C.S. § 1106(c)(3). However, as discussed above, factual and legal issues remain unresolved as to the applicable version of Section 1106 which instantly determines the trial court's imposition of restitution and therefore implicates non-waivable issues concerning the legality of Appellant's sentence. **See Weir**, 239 A.3d at 34. Moreover, Appellant has served the incarceration portion of her sentence and remains subject to a sentence of restitution as well as the remaining term of probation. These circumstances compel us to conclude it is appropriate to vacate the judgment of sentence in part and remand this matter to the trial court for an evidentiary hearing and argument to determine the applicable version of

Section 1106, including whether the Commonwealth intends to pursue restitution for municipalities and insurance companies as a part of Appellant's sentence. Consistent with the applicable version of Section 1106 as determined by the trial court, the court shall make findings of fact and conclusions of law as to whether the individuals or entities to whom it grants restitution is proper under the appropriate version of the statute.[13]

In sum, we affirm Appellant's convictions and the discretionary aspects of the trial court's sentence, and we vacate the portion of the judgment of sentence concerning the restitution and remand for further proceedings as described herein.

Judgment of sentence affirmed in part and vacated in part. Case remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/21

---

[13] As the there is no indication that the trial court originally intended its sentence to be a condition of probation, we will not discuss the appropriateness of restitution as a matter of probation upon resentencing. *Cf.* 42 Pa.C.S. §§ 9754, 9763.